IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

REGINALD L. DUNAHUE
ADC #106911                                                                                         PLAINTIFF

v.                              Case No. 2:19-cv-00126 KGB

JEREMY C. ANDREWS, *et al.*                                                                   DEFENDANTS

FINDINGS OF FACT AND CONCLUSIONS OF LAW

Before the Court is plaintiff Reginald L. Dunahue's request for damages following the entry of default judgment against separate defendants Myron Rhodes and Ladarius Williams (Dkt. Nos. 212; 239). On January 17, 2025, the Court conducted a hearing on damages in this matter (Dkt. No. 245). Mr. Dunahue appeared with counsel, Alexander Jones and Shayla Dawson. Defendants Mr. Rhodes and Mr. Williams were given notice of the hearing but were not present (Dkt. Nos. 241; 243). The Court makes the following specific findings of fact and conclusions of law.

    **I.**    **Procedural Background**

        **A.**    **Default Judgment**

Rule 55 of the Federal Rules of Civil Procedure contemplates a two-step process for the entry of default judgments. *Caterpillar Fin. Servs. Corp. v. Fast Energy Servs. LLC*, Case No. 1:17-cv-192, 2018 WL 3277549, at *1 (D.N.D. Jan. 25, 2018). First, pursuant to Rule 55(a), the party seeking a default judgment must have the clerk of court enter the default by submitting the required proof that the opposing party has failed to plead or otherwise defend. *Id.* Second, pursuant to Rule 55(b), the moving party may seek entry of judgment on the default under either subdivision (b)(1) or (b)(2) of the Rule. *Id.* Entry of default under Rule 55(a) must precede a grant

of default judgment under Rule 55(b).  *Id.*  Under Rule 55(b)(2), the Court may hold an evidentiary hearing to determine damages.  Fed. R. Civ. P. 55(b)(2).

A "default" occurs when a defendant fails to answer or respond to a complaint, and an "entry of default" is what the clerk of the court enters when it is established that a defendant is in default.  *Denton v. Conveyor Tech. & Components, Inc.*, Case No. 4:12-cv-191-KGB, 2013 WL 2422679 (E.D. Ark. June 1, 2013); *Roberts v. Kevmar Capital Corp.*, Case No. 4:11-cv-00681-BRW, 2012 WL 1193133 (E.D. Ark. April 10, 2012).  The entry of default is a procedural step in obtaining a default judgment; it is not determinative of any rights.  *Id.*  Pursuant to Federal Rule of Civil Procedure 8(b)(6), "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."  The entry of a default judgment is committed to the sound discretion of the district court.  *F.T.C. v. Packers Brand Meats, Inc.,* 562 F.2d 9, 10 (8th Cir. 1977).

Here, the Clerk entered a Clerk's default against Mr. Rhodes on June 17, 2024 (Dkt. No. 181), and on August 9, 2024, the Court entered a default judgment, reserving for trial the amount of damages to be awarded against Mr. Rhodes (Dkt. No. 212).

On January 6, 2025, the Court entered default judgment against Mr. Williams after determining that it was an appropriate sanction for Mr. Williams's failure to answer timely the amended complaint and to appear for his properly noticed deposition as required by the Federal Rules of Civil Procedure (Dkt. No. 239, at 20-21).  The Court reserved for trial the amount of damages to be awarded against Mr. Williams (*Id*., at 21).

On January 8, 2025, the Court set the case for a hearing on damages (Dkt. No. 241).  Mr. Rhodes and Mr. Williams both received notice of the hearing (Dkt. Nos. 241; 243).

B.     **Motion To Unseal**

At the hearing on damages held January 17, 2025, Mr. Jones on behalf of Mr. Dunahue began by making an oral motion to unseal, with redactions, docket entries 236-1 and 236-2. Mr. Dunahue argued that good cause exists to unseal the docket entries with redactions because the purpose for allowing the docket entries to be sealed was to allow for negotiations to take place between counsel for Mr. Dunahue and counsel for the producing non-party and to allow for redactions of confidential, personal, identifying information that was contained on the face of the two docket entries that were received by the Court under seal on December 20, 2024. Mr. Jones represented that he had conferred with counsel for the producing non-party, who stated that he opposed Mr. Dunahue's motion to unseal the documents with redactions. Mr. Jones provided the Court with his proposed, redacted versions of docket entries 236-1 and 236-2 for the Court's review, which he marked as Exhibits 1 and 2 to his motion for redaction.

Mr. Dunahue argued that the general public has a right of access to public documents and, with the exception of the personal, identifying information, the public has the right to know the contents of Exhibits 1 and 2 to his motion. Mr. Dunahue also argued that the motion needs to be made before final judgment to preserve his appellate rights. Mr. Jones explained that the documents at issue, under an agreement that he had with counsel for the producing non-party, have not been produced to Mr. Dunahue. He asks that the documents be unsealed so that he may produce copies of the redacted documents to Mr. Dunahue. Mr. Dunahue points the Court to *IDT Corp. v. eBay*, 709 F.3d 1220 (8th Cir. 2013), as support for his argument because, he asserts, it supports a general right for the public to have access to public information and, more specifically, court records.

The Court asked counsel for Mr. Dunahue what the producing non-party's objections were to Mr. Dunahue's motion, and Mr. Jones responded that he did not want to misconstrue their position, but he thought it was essentially to relevancy. The Court asked Mr. Jones to explain the relevancy of both exhibits. Mr. Jones stated that Exhibit 1 is relevant because it addresses the two-year period between 2017 and 2019, which concerns disciplinary reports that former defendant Warden Andrews failed to see through. Mr. Dunahue contends that the video footage of the forced cell extraction on June 13, 2018, which could not be obtained, took place during the time period of this investigation by the Arkansas Division of Correction ("ADC"), which resulted in repercussions for Warden Andrews. Mr. Dunahue asserts that Exhibit 2 is relevant because Lieutenant Graham was ultimately demoted and had an internal affairs investigation, which showed misconduct related to failure to preserve video footage in a use of force incident and an alleged false statement about defects with the recording device, which resulted in disciplinary action. Mr. Jones admitted that all the allegations post-dated the filing of Mr. Dunahue's complaint. Mr. Jones argues that this is prior bad act evidence under 404(b) and argues case law suggests it can also be admissible under subsequent bad act evidence.

Mr. Jones admitted that neither exhibit concerned Mr. Williams or Mr. Rhodes facially, and so the Court took Mr. Jones's oral motion to unseal docket entries 236-1 and 236-2 under advisement.

After reviewing Exhibits 1 and 2 to Mr. Dunahue's motion to unseal docket entries 236-1 and 236-2 and considering the arguments of counsel, the Court denies Mr. Dunahue's oral motion to unseal. Exhibits 1 and 2 to Mr. Dunahue's motion contain personal information regarding non-parties, including ADC inmates, as well as information related to security. Further, the allegations in Exhibits 1 and 2 to Mr. Dunahue's motion post-date Mr. Dunahue's complaint and are not

directly relevant to the allegations in Mr. Dunahue's complaint. The documents comprising Exhibits 1 and 2 largely relate to events that took place after the incident described in Mr. Dunahue's complaint, which occurred on June 13, 2018. For these reasons, the Court determines that Exhibits 1 and 2 should remain sealed. The Court denies Mr. Dunahue's motion to unseal docket entries 236-1 and 236-2.

### C.    Third Motion For Reconsideration

After presenting his testimony, Mr. Dunahue presented a document that the Court marked as plaintiff's Exhibit 5. Mr. Dunahue also read a statement into the record during which he moved for the Court to reconsider its Order of January 6, 2025 (Dkt. No. 239), denying his second motion for reconsideration challenging the Court's Order dated February 7, 2022 (Dkt. No. 111), which adopted a Recommended Disposition ("Recommendation") dismissing without prejudice ADC employee defendants Terrence Akins, Jeremy C. Andrews, Kathy Baxter, Emmer Branch, Kenneth Carlock, Franklin L. Graham, Stacy Roebuck, Justin Wilborn, and Jaykyree Wynn ("ADC Defendants") (Dkt. No. 94); the Court's Order of December 6, 2023 (Dkt. No. 150), where the Court construed a motion by Mr. Dunahue as a motion for reconsideration of the Court's Order adopting the Recommendation and denied the motion without prejudice after finding that Mr. Dunahue did not show any "clearly erroneous findings of fact or conclusions of law" (*Id.*, at 7); and the Court's Order again denying a motion for reconsideration of the Court's February 7, 2022, Order under both Federal Rules of Civil Procedure 54(b) and 60(b) (Dkt. No. 239).

The Court has reviewed Mr. Dunahue's Exhibit 5, his statement to the Court, and the Court filings referenced by Mr. Dunahue during his statement to the Court. After a thorough review of the record, the Court denies what it considers to be Mr. Dunahue's third motion for reconsideration of the Court's Order dated February 7, 2022 (Dkt. No. 111). The Court reiterates the reasoning in

its prior Orders and states that the objections to those Order raised by Mr. Dunahue in his statement to the Court break no new ground (Dkt. Nos. 94; 111; 150; 239).

**II.     Findings Of Fact**

1. Reginald Lamont Dunahue is an inmate at the East Arkansas Unit of the Arkansas Department of Correction, known as "Brickey's."

2. The incident at issue in this case was a forced cell extraction of Mr. Dunahue that occurred at Brickey's on June 13, 2018.

3. Mr. Rhodes and Mr. Williams were both involved in the forced cell extraction of Mr. Dunahue on June 13, 2018.

4. On June 12, 2018, Mr. Dunahue called the Arkansas State Police hotline to report that he had been having an ongoing problem with Warden Andrews and that, under Warden Andrews's direction, property that belonged to Mr. Dunahue had been confiscated and stored by Sergeant White.  Mr. Dunahue asserts that he had made numerous attempts to get the property back, to no avail, and Mr. Dunahue wanted to express that there were other issues going on at Brickey's that violated laws, such as drug introductions, and that Warden Andrews was calling the shots to get inmates assaulted by other inmates (*see also* Dkt. No. 236-1).

5. According to Mr. Dunahue, the next day, Warden Andrews instructed Lieutenant Graham and other officers to rush into Mr. Dunahue's cell, take everything out, and place Mr. Dunahue on behavior control because of Mr. Dunahue's report the previous day to the Arkansas State Police hotline.

6. Mr. Rhodes, along with other officers, placed Mr. Dunahue in handcuffs, placed Mr. Dunahue in restraints, and, once the door to Mr. Dunahue's cell was opened, Mr. Rhodes and

Mr. Williams, along with other officers, rushed inside the cell and began to remove property from the cell.

7. Lieutenant Graham and other officers attacked Mr. Dunahue, unprovoked, and beat Mr. Dunahue on his head and back. When Mr. Dunahue tried to rush out into the hallway, the officers followed him out into the hallway and continued their assault by kicking Mr. Dunahue on his legs, his knees, and all over his entire body. This went on for five to seven minutes in the hallway until the officers rushed Mr. Dunahue back inside the cell, the door was secured, and all restraints were removed.

8. Mr. Dunahue sustained injuries to his right knee, which had an open wound that was bleeding, and his back, which was in pain preventing him from straightening up.

9. Mr. Rhodes and Mr. Williams were two of the prison officials who were involved in the forced cell extraction that caused his injuries.

10. During the events in Mr. Dunahue's cell on June 13, 2018, Mr. Dunahue's eyeglasses were placed in a property bag. When the property bag was returned to him a few days later, Mr. Dunahue's eyeglasses were broken.

11. Mr. Dunahue requested new eyeglasses of ADC officials and of medical personnel on June 22, 2018; June 25, 2018; June 26, 2018; June 28, 2018; July 7, 2018; July 9, 2018; July 17, 2018; August 1, 2018; and August 9, 2018 (Ex. 2, Ex. 3).

12. Mr. Dunahue received new eyeglasses on September 5, 2018 (Ex. 3, Dunahue 0013).

13. On June 13, 2018, Nurse Van Pelt came to Mr. Dunahue's cell and treated Mr. Dunahue's knee (Ex. 3). Mr. Dunahue did not go to the infirmary that day.

14. On June 20, 2018, Mr. Dunahue reported injuries to his right leg, neck, and the back of his head due to a physical altercation with staff on June 13, 2018 (Ex. 3, Dunahue 0017).

15. Mr. Dunahue completed a health service request form complaining of back pain on July 14, 2018 (Ex. 2, Dunahue 0003). Mr. Dunahue continued to be unable to bend over in the mornings and was experiencing knee pain because of the injuries he sustained due to the cell extraction. Mr. Dunahue continues to experience pain in his knee when climbing stairs and when performing certain activities, like climbing into the transport van. Mr. Dunahue recently filed a grievance expressing that he cannot be transferred to the third tier of Brickey's because he cannot walk up the stairs because it causes him too much pain in his knee.

16. On July 25, 2028, Mr. Dunahue was seen by Geraldine Campbell, APN, for lower back pain (Ex. 4). Nurse Campbell found Mr. Dunahue to be in no acute distress, to be ambulatory with a steady gate, and determined that his back was symmetrical with no gross abnormality. Nurse Campbell recommended continuing Mr. Dunahue's currently prescribed plan of care, which was Ibuprofen 800 mg for 30 days.

17. On July 27, 2018, Mr. Dunahue wrote a request to be seen by the doctor to talk about the need for additional pain medication (Ex. 2, Dunahue 0009). Mr. Dunahue wanted to be prescribed Tylenol 3.

18. On September 28, 2018, and October 19, 2018, Mr. Dunahue continued to complain to medical professionals about recurrent back pain from the forced cell extraction on June 13, 2018 (Ex. 4, Dunahue 0023, 0027).

19. On October 19, 2018, Patrick S. Drummond, APN, reviewed x-rays with Mr. Dunahue (Ex. 4, Dunahue 0029).

20. On March 7, 2019, Mr. Dunahue mentioned back pain that is worse in the morning but lessens as the day goes on after his moving around (Ex. 4, Dunahue 0031). On examination, Mr. Dunahue's upper and lower extremities were found to be in no acute distress, and his gait was steady (*Id*.). Mr. Dunahue had normal range of motion and equal strength bilaterally (Ex. 4, Dunahue 0032). Mr. Dunahue asked for Tramadol or Tylenol 3 for his back pain, but he was given Tylenol (Ex. 4, Dunahue 0031-32).

21. Without his eyeglasses, Mr. Dunahue's daily life was affected because he was prevented from doing his legal work, such as reading cases and producing certain documents, and prevented from reading for pleasure. Mr. Dunahue was also unable to see in certain areas of the facility where he needed to go, which caused him to feel unsafe.

22. Because of his physical injuries, Mr. Dunahue was not able to exercise like he had been before the incident because he could not do push-ups and step ups due to lower back pain.

### III. Conclusions of Law

#### A. Legal Standard

When a default judgment is entered, facts alleged in the complaint are taken as true. *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (citing *Thomson v. Wooster,* 114 U.S. 104 (1885)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.")). However, "it remains for the [district] court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray v. Lene,* 595 F.3d 868, 871 (8th Cir. 2010) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2688 at 63 (3d ed. 1998) (other citations omitted)).

B.   **Analysis**

Mr. Dunahue asserts Eighth Amendment excessive force and First Amendment retaliation claims against Mr. Rhodes and Mr. Williams in his amended complaint (Dkt. No. 4).[1]

1.   **Excessive Force**

To demonstrate a *prima facie* case of excessive force under the Eighth Amendment, Mr. Dunahue must show that Mr. Rhodes and Mr. Williams used force "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The relevant factors that a court must consider when making this determination are: (a) the objective need for force; (b) the relationship between the need and the amount of force used; (c) the threat reasonably perceived by Mr. Rhodes and Mr. Williams; (d) any efforts by Mr. Rhodes and Mr. Williams to temper the severity of their forceful response; and (e) the extent of Mr. Dunahue's injuries. *See Ward v. Smith*, 844 F.3d 717, 721–22 (8th Cir. 2016); *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008); *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002).

According to Mr. Dunahue's unopposed testimony, Mr. Rhodes and Mr. Williams used physical force on him, and the use of force by Mr. Rhodes and Mr. Williams was completely unprovoked. Mr. Dunahue did not pose a threat because, before force was used by Mr. Rhodes and Mr. Williams, officers had placed Mr. Dunahue in handcuffs and restraints. Even though Mr. Dunahue did nothing to provoke the use of force against him, Mr. Rhodes, Mr. Williams, and

---

[1] Mr. Dunahue raised other claims unrelated to this lawsuit in his amended complaint, which were dismissed by the Court in an Order adopting in part and declining in part the Proposed Findings and Partial Recommendation of United States Magistrate Judge Patricia S. Harris (Dkt. No. 73).

10

others not currently before the Court beat and kicked Mr. Dunahue causing Mr. Dunahue injuries to his knee, back, head, and neck.

Mr. Dunahue was not taken to the infirmary on the day of the incident, but he was treated in his cell for a scrape to his knee. Mr. Dunahue later complained to medical personnel of pain in the back of his head, neck, and back. Mr. Dunahue was treated with mostly over-the-counter pain medications.

When Mr. Rhodes and Mr. Williams took property from Mr. Dunahue's cell, Mr. Dunahue's eyeglasses were taken. The eyeglasses were returned to Mr. Dunahue broken, and it took Mr. Dunahue over two months to obtain new eyeglasses.

Assuming the facts in the amended complaint and alleged at the hearing as true, the Court determines that Mr. Dunahue has asserted sufficient facts to demonstrate and evidence to support his excessive force claims against Mr. Rhodes and Mr. Williams.

### 2. Retaliation

Mr. Dunahue also asserts a First Amendment retaliation claim against Mr. Rhodes and Mr. Williams. To demonstrate a claim for First Amendment retaliation, Mr. Dunahue must prove: (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing the activity; and (3) that the adverse action was motivated, at least in part, by the exercise of the protected activity. *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020) (quoting *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013)). Speculative and conclusory or *de minimis* allegations cannot support a retaliation claim. *See Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam). The First Amendment protects prison grievances and inmate lawsuits. *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994)).

In his trial brief, Mr. Dunahue argues that Mr. Dunahue engaged in protected activity by analogizing his calling the Arkansas State Police hotline to calling the PREA hotline, which Mr. Dunahue asserts constitutes constitutionally protected activity (Dkt. No. 234, at 5 (citing *Taylor v. Battle*, 2022 WL 3152234, * 4 (W.D. Mich. Aug. 8, 2022) (citing *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298-99 (3d Cir. 2016); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006)); *but see Fuller v. Lopez*, 2020 WL 8834791 (D. Ariz. Dec. 1, 2010) (contrary holding)).  Mr. Dunahue argues that the retaliatory conduct "need not be a constitutional violation," but the violation is acting in retaliation for the exercise of constitutionally protected right (*Id.*).

The Court determines that Mr. Dunahue has not met his burden of proof to demonstrate a First Amendment retaliation claim against either Mr. Rhodes or Mr. Williams.  For purposes of resolving this issue, even if the Court were to assume without deciding that calling the Arkansas State Police hotline constitutes protected activity, and to assume without deciding that Mr. Dunahue demonstrated that the physical abuse that he suffered would chill a person of ordinary firmness, "[t]o satisfy the causal connection prong, 'the plaintiff must show the official took the adverse action because the plaintiff engaged in the protected speech.'" *Santiago v. Blair*, 707 F.3d 984, 993 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).  Mr. Dunahue must show that the protected activity was a "but-for cause of the adverse action, meaning that the adverse action against the plaintiff would not have been taken absent [a] retaliatory motive." *De Rossitte v. Correct Care Sols., LLC*, 22 F.4th 796, 804 (8th Cir. 2022) (quoting *Graham v. Barnette*, 5 F.4th 872, 889 (8th Cir. 2021) (internal quotations omitted)).

After considering Mr. Dunahue's allegations in the amended complaint and the evidence presented at the damages hearing, the Court determines that there is insufficient evidence on the record before the Court to prove a causal connection between the actions taken by Mr. Rhodes and

Mr. Williams and Mr. Dunahue's asserted protected activity. There is no evidence on the record before the Court that Mr. Rhodes and Mr. Williams were aware of Mr. Dunahue's call to the Arkansas State Police. Mr. Dunahue states that, during his call to the Arkansas State Police, he reported wrongdoing by Warden Andrews and that, because of the call, the next day Warden Andrews ordered Officer Graham and other officers to rush Mr. Dunahue's cell, take his property, and place him on behavior control. The Court determines that these allegations are insufficient to support a retaliation claim against Mr. Rhodes and Mr. Williams. *See De Rossitte*, 22 F.4th at 804 (citing *Meuir v. Greene Cnty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007) (determining summary judgment in favor of defendants was appropriate on plaintiff's retaliation claim because there was no direct or indirect evidence linking any adverse action to the filing of plaintiff's prison grievances, and plaintiff's "mere allegations of retaliatory motive are insufficient.")).

### 3. Compensatory Damages

Mr. Dunahue seeks compensatory damages for injuries to his knee, head, neck and back. Mr. Dunahue also seeks damages for not having the use of his eyeglasses from June 13, 2018, until September 5, 2018. At the hearing, Mr. Dunahue asked that the Court award Mr. Dunahue $500.00 a day for the 84 days that he was deprived of having his eyeglasses totaling $42,000.00. Counsel for Mr. Dunahue also requested $10,000.00 for Mr. Dunahue's various medical injuries evidenced by his various visits to medical providers. Additionally, Mr. Dunahue asked for three times the medical injury amount for pain and suffering. Mr. Dunahue requests a total award, jointly and severally against Mr. Rhodes and Mr. Williams, of $80,000.00. In addition, Mr. Dunahue is requesting that the Court award an additional 50% of the total amount of compensatory damages as a punitive damages award.

13

In determining just compensation, Eighth Circuit Model Jury Instruction 4.70 states that the Court must determine the physical pain and mental and emotional suffering the plaintiff has experienced and the nature and extent of the injury, and then must determine reasonable value of the medical care and supplies reasonably needed by and actually provided to the plaintiff. 8th Cir. Civil Jury Instr. § 4.70 (2023). Mr. Dunahue testified to back pain for several months, knee pain that continues today with certain activities, and neck and head pain immediately following the incident. Mr. Dunahue also testified to mental and emotional suffering that he experienced because of the incident. Finally, Mr. Dunahue testified to being unable to read and perform his legal work and to safely get around Brickey's due to the loss of his eyeglasses for over two months following the incident.

The Court determines based on its review of the record that $1,000.00 is an adequate sum to compensate Mr. Dunahue for the medical injury, pain, and suffering he experienced because of this incident. Accordingly, the Court awards Mr. Dunahue compensatory damages joint and severally against Mr. Rhodes and Mr. Williams in the amount of $1,000.00.

**4.     Punitive Damages**

Mr. Dunahue seeks an award of 50% of the compensatory damages award as punitive damages. The Eighth Circuit permits an award punitive of punitive damages if the Court finds in favor of the plaintiff, and it has been proved that the conduct of the defendants has been malicious or recklessly indifferent to the plaintiff. 8th Cir. Civil Jury Instr. § 4.72 (2023). The Court cannot award punitive damages based on the pleadings following a default judgment, but Mr. Dunahue must demonstrate punitive damages based on evidence presented at an evidentiary hearing under Federal Rule of Civil Procedure 55(b)(2). *Cutcliff v. Reuter*, 791 F.3d 875, 883 (8th Cir. 2015) ("As a general proposition, punitive damages cannot be awarded simply on the basis of the

pleadings, but must instead be established at an evidentiary hearing held pursuant to Fed. R. Civ. P. 55(b)(2) because they clearly are not liquidated or computable.") (quoting *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1152 (3d Cir. 1990)).  Mr. Dunahue did not introduce any evidence of malice on the part of Mr. Rhodes or Mr. Williams at the damages hearing.  Accordingly, the Court denies Mr. Dunahue's request for an award of punitive damages.

**IV.   Conclusion**

The Court rules as follows:

1. The Court denies Mr. Dunahue's motion to unseal docket entries 236-1 and 236-2.

2. For the reasons stated here and in the Court's prior Orders, the Court denies Mr. Dunahue's third motion for reconsideration of the Court's February 7, 2022, Order adopting Judge Harris's Recommendation dismissing without prejudice the ADC Defendants.

3. The Court granted Mr. Dunahue's motions for entry of default judgment against Mr. Rhodes and Mr. Williams (Dkt. Nos. 181; 239), and the Court determines, based on the amended complaint and the evidence presented at the damages hearing, that Mr. Dunahue is entitled to a judgment in his favor against individual capacity defendants Mr. Rhodes and Mr. Williams as to Mr. Dunahue's Eighth Amendment excessive force claims.  Mr. Dunahue did not present sufficient evidence to be entitled to judgment in his favor against Mr. Rhodes and Mr. Williams as to his First Amendment retaliation claims.

4. The Court awards Mr. Mr. Dunahue compensatory damages joint and severally against Mr. Rhodes and Mr. Williams in the amount of $1,000.00.  The Court denies Mr. Dunahue's request for punitive damages.  Mr. Rhodes and Mr. Williams are ordered to pay post judgment interest at a rate of 4.04% per annum from the date of the Judgment until paid in full.  Judgment will be entered accordingly.

It is so ordered this the 17th day of March, 2025.

*Kristine G. Baker*
Kristine G. Baker
Chief United States District Judge